of the United States Court of Appeals in and for the Seventh Judicial Circuit. Heery, heery, heery. All persons having business before this honorable court are admonished to draw near and give their attention as the court is now sitting. God save the United States and this honorable court. Good morning everybody. Good morning. We're here today for oral argument in a series of cases. Our first case is Appeal Number 21-2016, Financial Fiduciaries, LLC, and Thomas Batterman v. Gannett Company, Inc. We are going to begin with oral argument from the appellant. Mr. Filbreck, I'll recognize you. Thank you, Your Honor. Charles Filbreck, on behalf of the Plaintiff's Batterman and Financial Fiduciaries, I have four points that I'd like to highlight and I'm going to reserve five minutes for rebuttal if that's acceptable. Yes. My four, my four points, thank you, Your Honor, are Wisconsin law, judicial notice as employed in the Rule 12b-6 ruling, the rule to, the motion for reconsideration, and then ultimately the motion for reconsideration. Wisconsin law governs the substantive issues in this case and that's, that's an important point for two, two reasons. First of all, Wisconsin law is clear that determining whether an article is capable of defamatory meaning is ultimately a question of law. The defendant submitted a case authority that recently came down from this court concerning a defamation case. Fryden, I think, is the name of the plaintiff. It's an Illinois case applying Illinois law about whether, whether a statement is an opinion or a statement of fact. That's a question of law for the court. But here in Wisconsin, the question of whether the article is capable of defamatory meaning ultimately presents a question of fact. And if you look to Schaeffer versus State Bar of Wisconsin, and I quote, if an alleged communication is capable of a defamatory meaning, then the demur must be overruled. And if the language is of such a character that it is capable of a defamatory meaning, as well as a non-defamatory meaning, then a jury question is presented, whether such communication was understood in fact in a defamatory sense. Mr. Philbrick, which question of fact are you advancing? The judge has to, the judge was asked to discern, decide on a motion, a motion to dismiss whether the article was capable of defamatory meaning. And he specifically found that the article was not capable of defamatory meaning as to criminality. He said, no reason, you could not reasonably read that article and reach that conclusion. Well, Mr. Philbrick would have resulted then in Mr. Batterman not moving for summary judgment six weeks after the motion to dismiss. The timing of Mr. Batterman's motion for partial summary judgment really didn't impact anything at all, because as soon as that motion was filed in conjunction with the response to the motion to dismiss, the defendant moved pursuant to rule 56D to ask that, to ask that that motion for partial summary judgment be deferred and that the court only consider the motion to dismiss. And that motion was granted. So the court proceeded solely on the motion to dismiss and did not consider the cross motion for partial summary judgment that was on specifically this issue about defamatory meaning. The principal issue in this case is whether this article is capable of defamatory meaning with respect to criminality. The district court said it's incapable of that defamatory meaning as to criminality. No, it could not reasonably be understood that way. It is capable. Do you agree that, Mr. Philbrick, that the question of the privilege is a question of law or is it your argument that the question of whether or not the privilege applies is a factual question as well? The question of privilege is really secondary to the question of defamatory meaning. But wait, that wasn't my question, though. My question was, is the question of privilege a question of law or is that a question of fact? I think it's a question of law. The question of privilege would be a question of law to be put to the judge while the jury is considering whether there is evidence of defamatory meaning. But if that can be determined on the face of the complaint, why does it have to go to a jury? That doesn't apply in any other substantive area of the law. Precisely. And in the Isley case, it's very clear that the judicial privilege does not apply. Isley holds that the content of pleadings and accusations are, in and of themselves, not privileged. The public has a right to know under Isley what the judicial officers say and do. The public does not have a right to know. But Isley was a little different, though, wasn't it? Because Isley, it never got to the point of the judge having to make any kind of determination, which is different than here. I disagree with you. Isley is a controlling law on whether... Has any court ever applied Isley the way you're asking us to apply it? I'm certain that there is. I did not see any cases cited in your brief. And I'm sorry, Mr. Philbrook, go ahead. I didn't mean to interrupt you. Isley makes it clear that the privilege is limited to, just like the statute does, by the way, the privilege, judicial privilege, is limited to reports about what the judicial officer says and does. And my point to you this morning is to ask yourself, when you read this article, is this about what the judicial officer said and did? And is the report about the accusation secondary to that? So, Mr. Philbrook, if your reading of Isley is accurate, if we agree with that broad reading, how could the media ever report on a newly filed lawsuit without fear of being sued? Lawsuits are filed all the time that make allegations that don't necessarily put the defendants in the best light. And there's a First Amendment, right? The media reports on those. But if your reading of Isley is as broad as you're contending, how can those media outlets ever report on a newly filed complaint or, well, I'll leave it at that, a newly filed civil complaint without the fear of being sued? Your question is a good one in the sense that that is not the issue that we have here before us today. No, but the way you're asking us to it does indeed. And the solution there is not to extend or limit Isley. All of us are bound by Wisconsin law here, as pronounced by the Wisconsin Supreme Court. The solution to that dilemma is for the policymakers to articulate a law different than what they have, if that's what they desire. So do you agree that if we apply Isley as you're asking us to, that the media would always face this fear of being sued if they report on allegations in any new civil lawsuit that hasn't, where the district court or the trial court isn't making a ruling on anything in particular, that they'd always have the fear of being sued? Bluntly, yes, that is the law in Wisconsin. They have always had that fear. And so long as they report a proceeding fairly and accurately, then they will not be running afoul of Isley or the statute. But that is not what we have here. We have a case where scandalous accusations of criminal conduct were articulated three years before. Shortly thereafter, a successor trustee was appointed who investigated and concluded and reported to the judge and the beneficiaries that there was no evidence of fraud, of embezzlement, or false papers of any kind. Two years later, we have an article supposedly reporting on that judicial proceeding, and it is all about the scandalous accusations made by the American Cancer Society, which had long been debunked, rejected by the court, and not even abandoned by the American Cancer Society. None of that was contained in the original article published in August. Only then it was republished after Mr. Batterman complained, and it was republished as an update, and it has half a clause that's qualified that tries to describe what a judge did with regard to those accusations. May it please the court that I pass the baton at this point to counsel for the defendant and reserve my remaining five minutes. Very good, Mr. Philbrick. We'll do that. And Mr. Spahn, I'll recognize you. Good morning, your honors. Opposing counsel. May it please the court. My name is Brian Spahn from the law firm of Godfrey & Kahn on behalf of FLE and Defendant Gannett Company, Incorporated. Mr. Batterman was never exonerated or vindicated in the Geisler Trust litigation. He was found to have acted intentionally and in bad faith when handling the trust assets of Joseph Geisler. His conduct caused over $80,000 in damages to the trust, and while the successor trustee did initially conclude that there was no fraud, that same successor trustee later submitted to the court his conclusion that the charity's allegations of fraud and embezzlement were reasonable. Because the court found that Mr. Batterman breached his fiduciary duties and acted in bad faith, the court ordered extraordinary relief. Mr. Batterman was ordered to pay the legal fees of the four charities who had brought the probate case. Those are the facts that the Wausau Daily Herald truthfully and accurately reported in the article at issue in this case, and as the district court ruled, because the article accurately captured the gist of what occurred in the Geisler Trust litigation, Mr. Batterman's claim failed as a matter of law. I'd like to address Mr. Philbrick's point on this issue of whether defamatory meaning is a question of fact or a question of law. First, the case that Mr. Philbrick cites, the Schaefer case that he relies on in his opening brief, explicitly states, quote, in Wisconsin that the communication cannot reasonably be considered defamatory or to be so understood, a motion to Wisconsin has also held that a court as a matter of law decides whether an allegedly defamatory implication is fairly and reasonably conveyed by the words and pictures of the publication. So let me clarify this issue of defamatory meaning and what appellants are arguing. Essentially all that remains in this case, Mr. Batterman has abandoned his express defamation claims. He's abandoned his implication claim as it relates to a hyperlink contained in the article that referenced elder abuse and financial exploitation that was the subject of the lower court's summary judgment order. All that remains is Mr. Batterman's allegation that the article implies that he was found to have committed crimes as part of a probate case. That defamation claim fails as a matter of law because the implication that Mr. Batterman was found to have committed crimes as part of the Geyser Trust litigation is not fairly and reasonably conveyed by the words in the article itself. In fact, the opposite is true. As the article truthfully and accurately stated, quoted Judge Moran who presided over the Geyser Trust litigation, quote, the case solely concerned the beneficiaries of the trust, the request that Batterman be removed, and the responsibility for in the article could be considered defamatory insofar as they accurately reported on Mr. Batterman's misconduct and as a result necessarily lowered his reputation in the community. But again, those statements are substantially true and therefore Mr. Batterman's claim fails as a matter of law. Again, in Wisconsin an element of a defamation case is falsity and it is plaintiff's to establish falsity at the pleading stage. Moreover, as this court just recently ruled in the Fryden case, a case that we submitted to the court on Monday under a Rule 28J Supplemental Authority letter, that court, or excuse me, that decision affirmed the lower court's 12B6 dismissal based on the fact that a statement can be defamatory but is still not defamatory. In that case, the affirmative defense that was at issue was the fact that the statements at issue were opinions. Here, the affirmative defense at issue is the fact that the statements at issue are substantially true. It's the same conclusion. If you compare the articles, excuse me, the complaints allegations against the Geyser Trust litigation record and article itself as the district court properly did, only one conclusion can be made. The article truthfully and actually captures the gist of what occurred in the Geyser Trust litigation. And again, that is the standard. I'd like to focus you in on the differences between the August and the September versions of the article. Are the statements in the August version of the article substantially true and or privileged? And did the revisions that were made between the two articles make any kind of material difference? Thank you, your honor. The short answer is no. We win, Gannett wins, regardless of what version is considered. The update that occurred in September was the inclusion of what has been called the disclaimer language, which certainly defeats Mr. Batterman's claim insofar as it explicitly stated that although a judge later found that Batterman had not committed fraud, theft, or embezzlement, he ruled that the financial advisor had engaged in multiple acts of bad faith and ordered him to be removed from handling the Geyser Trust and to pay part of the charity's legal fees. So to be clear, if we're considering the September article, the implication claim certainly fails as a matter of law because that the article implies. But to answer your question again, your honor, the August original version of the article was also both substantially true and privileged. There's information contained in the original version that was published in August that makes clear what the gist of the Geyser Trust litigation was about. As I just quoted, Judge Moran stated in the original version in August that the case solely concerned the beneficiaries of the trust, the request that Batterman be removed, and the responsibility for legal fees. The original version in August also stated, quote, and that's the essence of the charity's case against Batterman. They say he sought to hold on to the Geyser's money for as long as he could in order to profit through monthly fees. I'd also like to point out, your honor, that Mr. Batterman had the original version of the article. He submitted two separate retraction demands to Gannett in the summer of 2018, requesting or demanding that the article be either retracted or withdrawn. This notion that he could not have litigated his case based on the original version of the article is simply false. It was his decision as to how to frame his claim. Moreover, his claim that my indulgence described to the complaint, his complaint alleges in paragraph 59 that rather than retracting the article and issuing the requested corrections, Gannett republished the defamatory article under the guise of updating the article without correcting the false statements of fact or issuing the article at issue in this case. The analysis might be different had Mr. Batterman alleged that after the defamatory or the allegedly defamatory article was published in August, Gannett updated the article or retracted the article in a way that satisfied Mr. Batterman. But that's not what he's alleging. What he's alleging is that the article was published in August, two retraction demands were submitted, Gannett updated the article, made corrections, and even those updates were not satisfactory. That the updated article forms the basis of his claim. Excuse me, was there ever any indication before the district court judge or the magistrate judge here that it was the August article at issue before the motion was filed after the ruling? Well, I want to make sure I understand your question, Your Honor. What occurred here was the complaint was filed, Gannett filed a motion to dismiss attaching as a part of that motion a version of the article. Mr. Batterman took issue with the fact that the version that was attached to Gannett's motion to dismiss did not include hyperlinks and therefore submitted his own copy and authenticated the record. It did not appear to me that before the magistrate judge, it was ever argued that no, it's the August version, not the September until after the court granted the motion to dismiss. That's correct, Your Honor. And the lower court made that point abundantly clear in denying the filed well after the deadline to file a motion to amend well after the court had issued its ruling on the 12b6 motion and after Gannett, and this is notable, after Gannett had filed his responsive pleading, an answer had been filed after or before Mr. Batterman filed his motion to amend. The court made that very point, Your Honor. It was Mr. Batterman's decision to litigate the motion to dismiss based on the September version of the article. He submitted the September version of the article, authenticated it, this notion, and just to be clear, the Seventh Circuit has adopted the incorporation by reference doctrine and has used it liberally. Again, that was also an issue in the most recent, in the recent Fryden case from a couple of weeks ago. As Judge Crocker ruled in his denial of the motion to leave, excuse me, the motion for leave to amend, Mr. Batterman wanted to litigate the 12b6 motion only on the August version. He could have done so. He could have requested that the court stay in consideration of that motion. He could have voluntarily withdrawn his claim without prejudice while he sought and tried to find the original version and then proceeded to litigate that way. He chose not to do that. And again, he had the article. He submitted a retraction demand. The notion that he could not have proceeded on his claim under the original version does not conform with the facts of the case. Mr. Spahn? Your Honor, go ahead. With regard to the August article and the claim that defamatory action occurred in that article, what should we make of the article decision to incorporate the drunk driving offense? Your Honor, I would say two things to that. One, the inclusion of the drunk driving offense is true. And as this court knows, it's well established that after that, truth is an absolute defense. And Mr. Batterman did not take issue with the fact that the... No, I'm not... Mr. Spahn, I'm not questioning the accuracy. I'm asking you, should that be read in context with the... And I'm not speaking about SEC here now. I'm talking about the drunk driving. Should that be read in any way to be supportive of the interpretation earlier in the article about the allegations that are contained in the complaint? Respectfully, Your Honor, I would say no for a couple of reasons. One, the article notes the drunk driving case in the context of other issues that Mr. Batterman has had. It does not attach the drunk driving case to the Geisler case at all. The implication that Mr. Batterman was somehow found to have committed crimes as part of a probate case cannot be drawn by the fact that the article truthfully and accurately reported that he had also been recently picked up for drunk driving. This is not a case, as far as defamation by implication, where statements or images are juxtaposed or placed in a way that somehow gleans a defamatory meaning such that he committed crimes as part of the and I have no idea. Had a child in a private school and he was behind on tuition payments and he was sued civilly for that and a judgment was rendered. Do you think that could be included like the drunk driving in the article about the trust? I do, Your Honor. I think that if it was a truthful account of a judicial proceeding, again, it is protected under the First Amendment, both based on the fact that it's substantially true and it's privileged to the extent that it's reporting on a judicial proceeding. This, again, is not a case where exculpatory information was omitted from the article such that it somehow inaccurately reported on the gist of what occurred in the Geiser Trust litigation. You cannot reasonably read the words of the article to conclude that Mr. Batterman was found to have committed crimes as part of a trust litigation. This was a probate case as the court, or excuse me, as the article repeatedly and accurately reports on, and therefore it's certainly just not reasonable to conclude that he was found to have committed crimes as part of that case. We ask that the court affirm the lower court's judgment dismissing Mr. Batterman's defamation claim. Thank you very much. Thank you, Mr. Spahn. Mr. Philbrook, we'll go back to you for rebuttal. Thank you very much, Your Honor. The very end there, counsel indicated that it's just simply not reasonable to read the article and conclude that Mr. Batterman engaged in criminal conduct, and that is the heart of our motion for reconsideration where, pursuant to a FOIA request, we obtained an email that was exchanged between two Wisconsin residents who happen to be prosecutors, and we presented it to the court, and what it says contradicts everything that both the district court and what counsel just said, and that email starts with Rundee saying to Gleyman, what do you think about him, meaning Thomas Batterman, and then sends the link to the article, and then Gleyman, she apparently reads the article four minutes later, says, interesting, sounds criminal to me, and the response immediately back is, that's what I said. I heard about him last night from a colleague. These people didn't know Mr. Batterman at all. All they knew is what they read about him in the September version of the article. But aren't they trained professionals, Mr. Philbrook? These people are applying the probable cause standard or beyond reasonable doubt standard all the time versus an average reader who wouldn't necessarily be doing that. And that's just it. The district court said, I'm going to dismiss this because they're prosecutors. They are not the ordinary reader. There is no ordinary reader standard. The district court made that up. The critical question for me as my counsel as plaintiff is that I have to show in a jury question, the jury questions presented whether the communication was understood in fact in a defamatory sense by who? Persons to whom it was published. There is no ordinary standard here. The question is, did people read it and reasonably conclude, people who read the article to whom it was published, reasonably conclude that my clients engaged in criminal conduct? This email is direct proof that that indeed was the case. Mr. Philbrook, can we even consider that email? You brought that in on your motion to reconsider claiming it was newly discovered evidence, but you had that evidence before the court ruled on the motion to dismiss, which doesn't suggest it was newly discovered. That is not accurate at all. The record showed that you had that about a week before that you received your FOIA request response about a week before that. I'm not sure what data you're looking at, but we received this email very shortly before we actually moved for reconsideration, which was after the court had ruled on the motion to dismiss. Well after, and we did not have it before then. We got this after the court granted summary judgment, I believe, or very close to it. But you received that before the court entered judgment. Not the opinion, but before the court formally entered judgment and didn't bring it to the court's attention until after judgment had been entered. That's correct, because we obtained it through the means of that FOIA request very shortly before we brought the motion. I apologize, I can't tell you right off the top of my head when we actually received it, but we got it obviously after the ruling on the motion to dismiss. You can consider it because the district court considered it. The district court didn't rule, I'm not considering this because it was untimely. You could have brought it to me sooner. We couldn't. We brought it as we got it. And it is direct evidence that the heart of the district court's ruling that the article is not capable of defamatory meaning as to criminality is wrong. And the standard is not a reasonable reader or an ordinary reader, it's someone to whom the article was published. And that's who these people are. And so we ask your honors to reverse the district court with respect to each of its rulings, remand the case for further proceedings, allow the amended complaint that will attach the August article and indicate that the court should set a new case schedule. Thank you. Thank you, Mr. Philbrook. Thank you, Mr. Spahn. The case will be taken under advisement.